# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DONNIE D. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 09-cv-293-DRH** |
| | ) | |
| **GREGORY LAMBERT, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

Plaintiff Donnie D. White brings this action against 43 employees at the Tamms Correctional Center.  Perhaps recognizing that he is barred from proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(g), White paid the full filing fee for this action.  This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  Upon careful review of the

supplemental amended complaint (Doc. 26), the Court finds it appropriate to exercise its authority

under § 1915A; portions of this action are subject to summary dismissal.

## FACTS ALLEGED

White states that in November 2007, he filed a civil rights action in the Central District of

Illinois. Defendants in that action included some of the defendants named in this action, specifically

Bundren, Newell, Dubois, Powers, Caliper, Couch, Kwasniewski,[1] Peppers, Clover, Evans, Baskin,

Leslie, George, Sherrard, Medlin, Miller, Melton, Watson, McCarthy, Walker, Turner, Roach,

Dawes and McCoy. White asserts, generally, that after these Defendants were served with a copy

of the complaint for that 2007 filing, they "engaged in a course of conduct designed to punish [him]

for exercising his constitutional right to file a lawsuit." From paragraphs 48 through 98 of the

supplemental amended complaint, White elaborates on the actions taken by these Defendants and

others. White then sets forth 10 enumerated claims, as discussed below.

## COUNT 1

On or about February 29, 2008, Defendants Sherrard and Boyd took White from his cell for

a visit to the nursing station. White states that he was "hearing voices" that told him to bang his

head into the wall, which he did. White alleges that Sherrard then grabbed him, slammed his head

into Defendant Bundren's knee, then threw White to the floor and began punching and kneeing him

in the head (¶¶ 52-56). White alleges that Sherrard's actions constitute the use of excessive force,

a violation of his rights under the Eighth Amendment.

The intentional use of excessive force by prison guards against an inmate without

penological justification constitutes cruel and unusual punishment in violation of the Eighth

---

[1] In the 2007 lawsuit, Kristin Kwasniewski was Kristin Hammersley.

Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

At this time, the Court is unable to dismiss this claim against Sherrard.

## COUNT 2

After the altercation with Sherrard, White was placed into a cell without any clothes. White states that Defendants Kwasniewski and Bundren directed that he be placed on a meal loaf diet for ten days; he alleges that this action was taken out of retaliation for the prior lawsuit he had filed against them (¶¶ 61-62)..

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). With a retaliation claim, the Court must consider whether the plaintiff experienced an adverse action that would likely deter First

Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009).

White does not specifically allege that these allegedly retaliatory activities would "deter a person of ordinary firmness" from exercising First Amendment activity in the future. *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). However, construing his *pro se* complaint liberally, and accepting all of his allegations as true, one possible inference of the complaint is that placement on meal loaf for ten days would deter a person of ordinary firmness from exercising his First Amendment rights. Whether his allegations are in fact true or whether the alleged harassment would actually deter a person of ordinary firmness are not questions that the Court can address at the pleading stage.

Therefore, at this time, the Court is unable to dismiss Count 2 against Kwasniewski or Bundren.

## COUNT 3

On February 29, 2008 (the same day as the altercation with Sherrard), White attempted to cut himself on his arms, using his fingernails. White alleges that he was not bleeding and did not want medical treatment. However, on orders of Defendant Powers, Defendants Boyd, Hunt, Bundren and Sherrard removed him from his cell. They then held him down while Powers sutured his arms; White alleges that Powers did not numb his arms for this treatment. White later began to bite the stitches out of his arms, so Powers repeated the process and again sutured his arm (¶¶ 63-77). White alleges that this treatment constitutes cruel and unusual punishment, in violation of his rights under the Eighth Amendment.

White refers to this claim as one involving medical treatment. The usual claim about medical treatment involves allegations of no medical treatment, or substandard medical treatment. Here, White alleges forced, unnecessary medical treatment, which more closely resembles yet another claim of the use of excessive force.

As stated above, the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson*, 503 U.S. at 6-7. Applying the standards set forth above with Count 1, the Court is unable to dismiss any portion of Count 3 at this time.

### COUNT 4

White alleges that Defendants Kwasniewski, George, Newell, Boyd, Bundren, Carter, Dubois, Hallam, Gossett and Couch were all present when Sherrard began to assault him. White states that he called out for help, but none of them took action to either prevent or stop Sherrard from assaulting him (¶¶ 58-59). Thus, White asserts that they are equally as liable for his injuries due to their failure to intervene.

The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987).

Thus, the Court is unable to dismiss this claim at this time.  However, even though he includes Defendant Miller in Count 4 (¶¶ 112-113), White makes no factual allegations against her with regard to this incident.  Accordingly, Defendant Miller is dismissed from Count 2.

## COUNT 5

White next alleges that Defendants Casteel, Caliper, Leslie, Melton, George, Couch, Miller, Evans, Baskin, Kwasniewski, Turner, Roach, Osman, Baggott, Hallam, Gossett, Houston, Bundren, Boyd, Sherrard, Dawes, Hunt, McCoy, Peppers and Bonifield were all present when Powers forcibly sutured his arms.  White states that he called out for help, but none of them took action to intervene. Thus, White asserts that they are equally as liable for his injuries (¶¶ 73-74).

The Court wonders whether all 25 of these individuals could possibly have been physically present in the same location while Powers forcibly sutured White's arms.  However, in evaluating the complaint under § 1915A, the Court is required to accept a plaintiff's factual allegations as true, unless those allegations are clearly baseless or delusional.  *See Neitzke*, 490 U.S. at 325.  Therefore, applying the standards set forth above in Count 4, the Court is unable to dismiss any portion of Count 5 at this point in the litigation.

## COUNT 6

White next alleges that Defendants Branche and Plummer confiscated and destroyed a large amount of his personal property, including reading material, correspondence, photographs, and assorted food items.  White alleges they specifically told him that their actions were taken out of

retaliation for the lawsuit he had filed against their friend, Defendant Clover, and that he should not have filed that lawsuit (¶¶ 83-85)..

If this claim was only about lost or confiscated property, White's sole remedy would be an action for damages in the Illinois Court of Claims.  *See* 705 ILCS 505/8.  However, he clearly alleges that this action was taken in retaliation for the filing of a lawsuit.  Thus, the Court must consider whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action.  *Bridges*, 557 F.3d at 552.  Such a determination cannot be made simply on the face of the complaint; thus, the Court is unable to dismiss Count 6 at this time.

## COUNT 7

White next alleges that in retaliation for his two lawsuits, he was confined to an elevated security wing of Tamms.  He states that determination of assignment to this wing is under the control of Defendants Lambert, Dillon, Hallam, Gossett, Tanner, Parrish, Couch, Caliper, Clover, Peppers and Evans.  According to White, assignment to this wing is evaluated on a quarterly basis, and an inmate is eligible to leave that wing if he has not received any disciplinary tickets.  White states that he received no disciplinary tickets from October 2007 through August 2009, yet he remains confined to this wing. White further alleges that each of these 11 individuals told him that he was being held in that wing due to his prior lawsuits, and that he would remain in that wing as long as the lawsuits remained pending (¶¶ 86-93).

As with Count 2 and Count 6, the Court must consider whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First

Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges*, 557 F.3d at 552. Such a determination cannot be made simply on the face of the complaint; thus, the Court is unable to dismiss Count 7 at this time.

## COUNT 8

In his eighth claim, White returns to the altercation with Sherrard on February 29, 2009. He asserts that as a result of Sherrard's assault, he suffered a "busted lip." However, he alleges that Defendant George did not provide him with medical treatment for this injury (¶ 57).

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain". *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The Court questions whether a "busted lip" constitutes a serious medical need mandating immediate medical treatment. Moreover, White merely alleges that George did not provide him with medical treatment; he makes no

allegations that she did so with the requisite mental intent of deliberate indifference.

Accordingly, White has failed to state a claim with respect to his injured lip, and Count 8 will be dismissed from this action with prejudice.

## COUNT 9

White next challenges his conditions of confinement from February 29 through March 3, 2008, in a restraint cell. He specifically alleges that Powers ordered him placed into six-point restraints without any clothing for a 24-hour period. White also alleges that Powers directed officers not to feed him during that period in restraints. These orders were repeated daily until March 3. White states that he was placed on a cold steel bench without clothing for over 96 hours with cold air blowing on him, and that food was withheld from him during that 96-hour period. He states that he complained to Defendants Melton, George, Leslie, Miller, Medlin, Klein, McCarthy, Watson, Woods and Walker about these conditions, but none of them took action to alleviate these conditions.

To establish a violation of the Eighth Amendment, a prisoner must prove two elements: (1) the deprivation alleged is sufficiently serious such that it resulted in the "denial of the minimal civilized measure of life's necessities" and (2) prison officials knew of a substantial risk to the prisoner but failed to take reasonable steps to prevent the harm from occurring. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999) (*quoting Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Neither exposure to the cold nor deprivation of food is a *per se* violation of the Eighth Amendment. Instead, a district court must assess the amount and duration of the deprivation. *See, e.g., Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (courts must consider factors including "the severity of the cold; its duration; whether the prisoner has alternative means to protect himself from the cold;

the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong).

Evaluating White's allegations under these standards, the Court is unable to dismiss any portion of Count 9 at this time.

## COUNT 10

White's final claim returns to the underlying theme of retaliation for his prior lawsuits. He states that he suffers from bipolar disorder, paranoia, and schizophrenia, of which Defendants Kwasniewski, Kachtgian, Caliper, Couch, Clover, Peppers, Baskin and Evans are aware. White alleges that out of retaliation for his lawsuits, these Defendants are intentionally misdiagnosing and mistreating his mental illness as simple malingering, which serves to exacerbate his condition. He also alleges that his mental illness is a qualifying handicap or disability under the Rehabilitation Act, 29 U.S.C. § 794, and he is entitled to treatment for his condition. Finally, White alleges that each of these individuals has told him that as long as his lawsuits are pending against them and others, he will not receive any mental health treatment.

As with Count 2, Count 6 and Count 7, the Court must consider whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges*, 557 F.3d at 552. Such a determination cannot be made simply on the face of the complaint; thus, the Court is unable to dismiss Count 10 at this time.

## MOTION TO APPOINT MARSHAL FOR SERVICE (DOC. 12)

In this motion, White asks the Court to appoint the United States Marshal to effect service upon Defendants.  Such an appointment would automatically be done if White had been granted pauper status in this action.  *See* FED.R.CIV.P. 4(c)(3).  Such an appointment may also be made upon application of the plaintiff, as White has done here.  *Id.*

This motion is **GRANTED**.  However, because he has not been granted pauper status, **White is ADVISED that ALL COSTS OF SERVICE WILL BE CHARGED TO HIM**.

## DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 8** is **DISMISSED** from this action with prejudice.  Plaintiff is advised that, within the Seventh Circuit, dismissal of these claims and defendants count as yet another a strike for purposes of § 1915(g).  *See George v. Smith,* 507 F.3d 605, 607-08 (7th Cir. 2007); *Boriboune v. Berge,* 391 F.3d 852, 855 (7th Cir. 2004).

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for **each named Defendant**.  The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on **each named Defendant** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is

mailed by the Marshal, as noted on the USM-285 form.

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from I.D.O.C. pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for

consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** of his continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts during the pendency of this action.  This notification shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.  Failure to provide such notice may result in dismissal of this action.  *See* FED.R.CIV.P. 41(b).

**IT IS SO ORDERED.**

**DATED:   March 25, 2010.**


      /s/     DavidRHerndon
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**