## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DONNIE D. WHITE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 09-cv-293-MJR[1] |
| | ) |
| **GREGORY LAMBERT, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### I. Introduction and Factual/Procedural Background

In April 2009, Donnie D. White, an inmate incarcerated at Tamms Correctional Center, filed suit for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff subsequently amended his complaint twice before the Court's preliminary review(Docs. 21 and 26). At this juncture, White's "Supplemental First Amended Complaint" controls (Doc. 26). Nine claims against a total of 41 defendants survived Chief Judge David R. Herndon's threshold review. White alleges that, in retaliation for two civil rights actions he had filed[2], the defendants engaged in a course of conduct designed to punish him. Plaintiff's nine claims are summarized as follows:

---

[1] Administrative Order 132 reassigned this case from Chief Judge David R. Herndon to Judge Michael J. Reagan (Doc. 258).

[2] Twenty-five of the 41 defendants in this action were also defendants in at least one of the two other actions filed by plaintiff. Bundren, Newell, Dubois, Powers, Caliper, Couch, Kwasniewski, Peppers, Clover, Evans, Baskin, Leslie, George, Sherrard, Medlin, Miller, Melton, Watson, McCarthy, Walker, Turner, Roach, Dawes and McCoy were named defendants in *White v. Jones*, No. 07-1311-JBM-JAG ( C.D.Ill.filed 11/19/2007). Couch, Kwasniewski, Rollins-Hill, Bonifield, Newell, Powers, Walker, Caliper, Clover, Peppers and Leslie were named defendants in *White v. Hinsley*, No. 05-594-DGW (S.D.Ill. Filed 8/15/2004).

**COUNT 1**
On or about February 29, 2008, Defendants Sherrard and Boyd took White from his cell for a visit to the nursing station. White states that he was "hearing voices" that told him to bang his head into the wall, which he did. White alleges that Sherrard then grabbed him, slammed his head into Defendant Bundren's knee, then threw White to the floor and began punching and kneeing him in the head (¶¶ 52-56). White alleges that Sherrard's actions constitute the use of excessive force in violation of the Eighth Amendment.

**COUNT 2**
After the altercation with Sherrard, White was placed into a cell without any clothes. White states that Defendants Kwasniewski and Bundren directed that he be placed on a meal loaf diet for ten days; he alleges that this action was taken in retaliation for the prior lawsuit he had filed against them (¶¶ 61-62), thereby violating his rights under the First Amendment.

**COUNT 3**
On February 29, 2008 (the same day as the altercation with Sherrard), White attempted to cut himself on his arms, using his fingernails. White alleges that he was not bleeding and did not want medical treatment. However, on orders of Defendant Powers, Defendants Boyd, Hunt, Bundren and Sherrard removed him from his cell. They then held him down while Powers sutured his arms; White alleges that Powers did not numb his arms for this treatment. White later began to bite the stitches out of his arms, so Powers repeated the process and again sutured his arm (¶¶ 63-77). White alleges that this treatment constitutes cruel and unusual punishment, in violation of his rights under the Eighth Amendment.

**COUNT 4**
White alleges that Defendants Kwasniewski, George, Newell, Boyd, Bundren, Carter, Dubois, Hallam, Gossett and Couch were all present when Sherrard began to assault him. White states that he called out for help, but none of them took action to either prevent or stop Sherrard from assaulting him (¶¶ 58-59). Thus, White asserts that they are equally as liable for his injuries due to their failure to intervene– a violation of the Eighth Amendment.

**COUNT 5**
White next alleges that Defendants Casteel, Caliper, Leslie, Melton, George, Couch, Miller, Evans, Baskin, Kwasniewski, Turner, Roach, Osman, Baggott, Hallam, Gossett, Houston, Bundren, Boyd, Sherrard, Dawes, Hunt, McCoy, Peppers and Bonifield were all present when Powers forcibly sutured his arms. White states that he called out for help, but none of them

took action to intervene. Thus, White asserts that they are equally as liable for his injuries (¶¶ 73-74)–a violation of the Eighth Amendment.
a violation of the Eighth Amendment.

### COUNT 6
White next alleges that Defendants Branche and Plummer violated his rights under the First Amendment by confiscating and destroying a large amount of his personal property, including reading material, correspondence, photographs, and assorted food items. White alleges they specifically told him that their actions were taken out of retaliation for the lawsuit he had filed against their friend, Defendant Clover (¶¶ 83-85).

### COUNT 7
White next alleges that in retaliation for his two lawsuits, in violation of the First Amendment, he was confined to an elevated security wing of Tamms. He states that determination of assignment to this wing is under the control of Defendants Lambert, Dillon, Hallam, Gossett, Tanner, Parrish, Couch, Caliper, Clover, Peppers and Evans. White further alleges that each of these 11 individuals told him that he was being held in that wing due to his prior lawsuits, and that he would remain in that wing as long as the lawsuits remained pending (¶¶ 86-93).

### COUNT 9
White next challenges his conditions of confinement from February 29 through March 3, 2008, in a restraint cell. He specifically alleges that Powers ordered him placed into six-point restraints without any clothing for a 24-hour period. White also alleges that Powers directed officers not to feed him during that period in restraints. These orders were repeated daily until March 3. White states that he was placed on a cold steel bench without clothing for over 96 hours with cold air blowing on him, and that food was withheld from him during that 96-hour period. He states that he complained to Defendants Melton, George, Leslie, Miller, Medlin, Klein, McCarthy, Watson, Woods and Walker about these conditions, but none of them took action to alleviate these conditions, thereby violating his rights under the Eighth Amendment.

### COUNT 10
White's final claim returns to the underlying theme of retaliation for his prior lawsuits, in violation of the First Amendment. He states that he suffers from mental illness, of which Defendants Kwasniewski, Kachtgian, Caliper, Couch, Clover, Peppers, Baskin and Evans are aware. White alleges that out of retaliation for his lawsuits, these Defendants are intentionally misdiagnosing and mistreating his mental illness as simple malingering, which serves to exacerbate his condition. He also alleges that his mental illness is a qualifying handicap or disability under the Rehabilitation Act, 29

> U.S.C. § 794, and he is entitled to treatment for his condition. Finally, White alleges that each of these individuals has told him that as long as his lawsuits are pending against them and others, he will not receive any mental health treatment.

(*See* Doc. 27).

On July 26, 2010, White voluntarily dismissed all claims against Defendants Hunt and McCarthy (Docs. 174 and 196).

In June 2010, Defendants Baggot, Caliper, Casteel, Dubois, Gossett, Houston, McCoy and Osman filed a motion for summary judgment (Doc 136), arguing that Plaintiff White failed to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a). Defendants Boyd, Bundren and Sherrard subsequently filed a similar motion for summary judgment (Doc. 138). The motions pertain to Counts 3, 4, 5, and 7. Plaintiff White filed consolidated responses to the motions (Docs. 199, 200 and 206), to which the defendants replied (Doc. 204). Defendants later moved to strike portions of White's response (Doc 209), asserting that certain documents[3] had been forged and false testimony had been proffered. Defendants also moved for sanctions (Doc. 214). Plaintiff White responded to the motions to strike and for sanctions (Docs. 211, 212 and 218).

The motions for summary judgment, to strike and for sanctions were all

---

[3] The documents at issue are: (1) A grievance dated April 27, 2008, bearing two "Received and Reviewed" date stamps (May 7, 2008, and September 14, 2009) filed by Plaintiff at Doc. 199-1, pp. 12-13 (Plaintiff's Ex. C), and Doc. 200, pp. 17-18 (Plaintiff's Ex. A-1), and also included as an exhibit to the Report and Recommendation at Doc. 241-1, pp. 1-2; and (2) A homemade receipt of sorts, bearing the signature "Toma" and the date 5/5/8, filed by Plaintiff at Doc. 199-1, p. 15 (Plaintiff's Ex. D), and at Doc. 200, p. 20 (Plaintiff's Ex. B), and also included as an exhibit to the Report and Recommendation at Doc. 241-5, p. 1.

referred to Magistrate Judge Clifford J. Proud, who held an evidentiary hearing (Doc. 240) and then submitted a Report and Recommendation addressing all motions (Doc. 241).

The Report recommends that the motions for summary judgment be granted, in that Defendants had met their burden of showing that Plaintiff failed to exhaust administrative remedies relative to Counts 4 and 7. With respect to Counts 3 and 5, Judge Proud did not reach the merits of Defendants' arguments for summary judgment; rather, the question of whether forged documents and false statements had been proffered controlled Judge Proud's analysis. Judge Proud concluded that Plaintiff had submitted forged documents in an effort to claim an exception to the exhaustion requirement stemming from the action or inaction of prison employees (*see Dole v. Chandler*, 438 F.3rd 804 (7th Cir. 2006)). Consequently, Judge Proud recommended striking the grievance Plaintiff had submitted in support of his position, thereby leaving Defendants' argument for summary judgment on Counts 3 and 5 unrefuted. Moreover, Judge Proud recommended that, in accordance with Federal Rule of Civil Procedure 11(c)(4), Plaintiff's case be dismissed as to *all* of the defendants (not just those who moved for summary judgment and/or for sanctions).

Plaintiff White objected to the Report and Recommendation (Doc. 247), claiming that Judge Proud was prejudiced against him, as illustrated by certain comments and numerous evidentiary rulings. Plaintiff's objections pertain to the forgery issue and Judge Proud's allowing nonmoving defendants to participate in the evidentiary hearing and benefit from any sanction imposed. Plaintiff reasserts his principal argument from the

5

evidentiary hearing, that the fact that prison officials made copies of the alleged cut-and-paste forgeries for Plaintiff without repercussions indicates that the documents were not forged or altered.

Defendants responded (Docs. 248 and 251), noting that Plaintiff did not specifically object to the analysis and recommendation regarding Counts 4 and 7, and asserting that Plaintiff did not present evidence to refute Judge Proud's conclusion that Plaintiff's documentation had been forged and altered. Furthermore, Defendants argue that Plaintiff could have subpoenaed witnesses for the evidentiary hearing, but he simply did not do so. Moreover, Defendants argue that Plaintiff failed to object during the evidentiary hearing to the admission of Defendants' exemplars, Exhibits B, C and D (Doc. 241-2; Doc. 241-3 and Doc. 241-4).

Accordingly, the Court will undertake *de novo* review of the portions of the Report to which specific objection was made. 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); Southern District of Illinois Local Rule 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject or modify the recommended decision, or recommit the matter to the Magistrate Judge with instructions. FED. R. CIV. P. 72(b); Local Rule 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999).

## II. The Exhaustion Requirement and the Standard for Summary Judgment

The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners to exhaust administrative remedies before filing suit in federal court. That requirement applies to all suits challenging prison conditions under 42 U.S.C. § 1983, as well as actions under "any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a).

Exhaustion of administrative remedies under the PLRA is a condition precedent to suit in federal court. *Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002). The law of this Circuit establishes that the inmate must comply with the rules and procedures governing grievances in the particular institution of incarceration, including any time limitations and *all steps* in a multi-step grievance process.

To properly exhaust remedies within the meaning of the PLRA, the inmate "must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). *See also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005). If administrative remedies are *not* properly exhausted prior to commencement of the federal lawsuit, the district court must dismiss the suit (or any claims not fully exhausted). *Burrell*, 431 F.3d at 285; *Jones v. Bock*, 549 U.S. 199, 201 (2007).[4] The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Ill. Admin. Code Section 504.810 (West 2008). The inmate is required to follow the sequential process, concluding with an appeal in writing to the Director of the IDOC, by way of the Administrative Review Board (ARB).

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004). A remedy is "available" if the administrative procedure can lead to some

---

[4] Dismissal is without prejudice to initiating another action, if appropriate, after all remedies have been exhausted. *Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice ...."), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("all dismissals under § 1997e(a) should be without prejudice"). *Accord Barnes v. Briley*, 420 F.3d 673, 676 (7th Cir. 2005).

relief, even if it is not the precise relief the inmate wants. *See Booth v. Churner,* 532 U.S. 731, 741 and f n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742. In accordance with *Pavey*, Judge Proud conducted an evidentiary hearing on Defendants' motions for summary judgment, which was combined with a hearing on Defendants' motions to strike and for sanctions.

Summary judgment is appropriate where the pleadings, discovery materials, and any

affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Turner v. The Saloon, Ltd.,* 595 F.3d 679, 683 (7th Cir. 2010); *Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009)(citing Fed.R.Civ.P. 56(c)). *Accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

In ruling on a summary judgment motion, the district court must construe all facts in the light most favorable to, draw all legitimate inferences in favor of, and resolve all doubts in favor of the non-moving party. *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). *Accord Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010); *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007). When the non-moving party bears the burden of proof, he must demonstrate the existence of a genuine fact issue to defeat summary judgment. *Reget*, 595 F.3d at 695. Stated another way, to survive summary judgment, the non-movant must provide evidence on which the jury or court could find in his favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008).

### III. Analysis

As a preliminary matter, because Plaintiff has not specifically objected to any aspect of the Report and Recommendation regarding Counts 4 and 7, the Report and Recommendation is **ADOPTED** in so far as the moving defendants are entitled to summary judgment on Counts 4 and 7.

With respect to Counts 3 and 5, Plaintiff countered Defendants' otherwise unrefuted assertion that he had not exhausted administrative remedies by asserting that he attempted to exhaust administrative remedies, to no avail. More specifically, Plaintiff stated: "Grievance Officer stamped 5-07-2008 Received Grievance Officer on Plaintiff's 4-27-08 Amended Grievance and 9-14-2009," and "Grievance Officer returned Plaintiff's 4-27-08 Amended Grievance unprocess[ed]" (Doc. 200, p. 3). Plaintiff supported those assertions by submitting: (1) a grievance dated April 27, 2008, bearing two "Received and Reviewed" date stamps (May 7, 2008, and September 14, 2009); and (2) a homemade receipt of sorts, bearing the signature "Toma" and the date "5/5/8." If accepted by the Court, Plaintiff's documentation would render administrative remedies "unavailable," in accordance with *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006), and *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008).

Faced with a discrepancy in documentation, defense counsel investigated and discerned that Plaintiff's Amended Grievance dated April 27, 2008, had, according to Illinois Department of Corrections' records, been received on September 14, 2009– *without* a stamp indicating it had been received on May 7, 2008. The affidavit of Correctional Counselor April Moore, and true and correct copies of the grievances and related documents maintained by the Illinois Department of Corrections, were submitted (Doc. 209-1, pp. 1-6).

On October 10, 2010, Judge Proud sent notice that an evidentiary hearing was set for November 16, 2010 (Doc. 213). As the hearing commenced, in light of the revelation that April Moore was being called by Defendants as a witness[5], Plaintiff stated, "I had a couple of staff at Tamms too that I wanted to call as a witness, which could be available via video conference and a

---

[5]Defendants' witnesses appeared voluntarily, not in response to subpoenas.

couple inmates in regards to the authenticity of my grievances in this hearing." (Doc. 240, p. 4). Judge Proud inquired whether the witnesses had been subpoenaed, and Plaintiff replied, "No." (Doc. 240, p. 4). Plaintiff then explained that the witnesses would testify about "similar incidents," where administrative remedies had been ruled "unavailable." (*See* Doc. 240, pp. 4-5; *see also* p. 42). Plaintiff subsequently stated that he had thought he was to appear via video and did not learn until a few days before the hearing that he was to appear in person, and he was unaware Defendants were going to call witnesses. (Doc. 240, pp. 42-43). Plaintiff was not permitted to spontaneously call witnesses to appear via video.

Given Plaintiff's *pro se* status, the Court finds that Plaintiff sufficiently preserved his objections to Defendants calling witnesses without issuing subpoenas, and to Judge Proud's refusal to spontaneously summon Plaintiff's witnesses to testify via video. (*See* Doc. 240, pp. 4-5 and 42-43). Defendants' witnesses- prison employees- appeared voluntarily. Judge Proud correctly observed that subpoenas were not required. In contrast, Plaintiff wanted to spontaneously summon prison staff and inmates, where there was no indication that those witnesses were ready and willing to appear and testify. Although Plaintiff only learned a few days before the trial that he was to appear live, he did not assert that he was unaware of the hearing itself. Whether Plaintiff was slated to appear in person or via video does not change the fact that he was aware of the hearing and what the issues were, and he did not attempt to issue subpoenas to his proposed witnesses. Furthermore, evidence of other similar cases where administrative remedies were deemed unavailable are irrelevant and do not establish whether the key documents in this case were forged.

Plaintiff also sufficiently voiced objection to Defendants investigating his documentation after the period for discovery had ended. (*See* Doc. 240, p. 37). This objection fails

11

because investigation of possible fraud is tangential and unrelated to the case-in-chief, and therefore not governed by the pretrial discovery order.

At the start of the hearing Plaintiff objected to counsel for the nonmoving defendants participating in the hearing (Doc. 240, p. 41). Plaintiff now renews that objection. The motion for sanctions raised the issue of Plaintiff's failure to withdraw the allegedly forged documents, and Plaintiff's continued use of the documents to support his case (Doc. 214, p. 3). Therefore, the nonmoving defendants had a stake in the outcome of the hearing, and it was appropriate for Judge Proud to permit counsel for all of the defendants to participate. In any event, the very limited questioning of witnesses by counsel for the nonmoving defendants was redundant and was not dispositive to either Judge Proud's or this Court's analysis.

Plaintiff objects that Defendants should have been required to produce original documents at the hearing, rather than copies. This issue is waived, as Plaintiff did not make such an objection at the hearing. (Doc. 240, p. 48). However, in consideration of Plaintiff's *pro se* status, and the fact that at the conclusion of the hearing Plaintiff generally questioned Defendants' failure to bring the original versions of all the documents discussed at the hearing, this issue will be addressed. Plaintiff himself filed the documents being challenged (the Apirl 27, 2008, grievance bearing two date stamps, and the receipt purportedly signed by "Toma" on "5/5/8"). Defendants submitted enlargements of portions of those documents, and documents for comparison, which were certified via an affidavit and testimony from April Moore. (Doc. 209-1; Doc. 240, pp. 9-13). Plaintiff did not raise any genuine question about the authenticity or origin of the photocopied documents submitted by Defendants. Therefore, the admission of the duplicates was appropriate, pursuant to Federal Rule of Evidence 1003.

Plaintiff waived any objection that the Court should have required handwriting exemplars or FBI verification that the "Toma" signature on the receipt of grievance submitted by Plaintiff was a forgery. Witness Moore testified that she is familiar with Toma Osman's handwriting, and that what purports to be her signature on the receipt of grievance is not Osman's signature. Plaintiff did not object to this testimony during the hearing, so any objection is waived. (Doc. 240, pp. 29-31). Also, verification of handwriting in that fashion is legally sufficient for its admission into evidence. *See U.S. v. Tipton*, 964 F.2d 650 (7th Cir. 1992).

Plaintiff contends that, since inmates are not permitted to have paste, glue and the like, and a fabricated document given to prison staff for photocopying would presumably be spotted and lead to discipline, the documents he filed cannot be forgeries because he was never disciplined. At Plaintiff's request, April More speculated at the evidentiary hearing that a "received" stamp cut from another document would be affixed, using some type of homemade glue (Doc. 240, p. 14). Moore went on to state that, despite prison rules, in the past Plaintiff had sent her a document that contained "tape or some other unallowed item"(Doc. 240, p. 15). Plaintiff later testified that he was allowed to possess envelopes with sealant– or what is left after the sealant has been licked (Doc. 240, p. 40).

Plaintiff objects to Judge Proud allowing Moore to testify about tape, when the issue was whether Plaintiff had glued or pasted a false date stamp to his grievance. Plaintiff waived this objection by not raising it during the evidentiary hearing. Moreover, by asking Moore how a cutout stamp would be affixed to a grievance, *Plaintiff* opened the door to Moore's testimony, so he cannot object. Also, the question of how the date stamp was affixed to the grievance is not really relevant or dispositive. The key inquiry is whether the document was fabricated, which can be discerned

merely by looking at the document and noting the misalignment of the May date stamp.

Plaintiff objects to the nonmoving defendants gaining a benefit if all of Plaintiff's claims are dismissed as a sanction for submitting forged documents. Federal Rule of Civil Procedure 11(c)(1) gives the Court discretion to impose "an appropriate sanction." Rule 11(c)(4) prescribes that the sanction be limited to "what suffices to deter repetition of the conduct or comparable conduct by others." Judge Proud recommends that all claims against all defendants be dismissed. From Judge Proud's perspective, the submission of forged documents subverts the judicial process and, in this situation, has caused a waste of limited judicial resources, as well as the time and money of the defendants and the Illinois Department of Corrections, which had to transport Plaintiff to Court. Quoting from *Ridge Chrysler Jeep v. DaimlerChrysler Financial Services*, 516 F.3d 623, 626 (7th Cir. 2008), Judge Proud observed that one who misuses litigation relative to some claims is hardly in a position to insist the Court address any other legitimate claims. This Court agrees.

Sanctioning Plaintiff by dismissing Counts 3 and 5, which without the forged documents fail on their own, is hardly a sanction. And, a monetary sanction would have little or no impact. The only meaningful sanction likely to deter Plaintiff and other inmates from submitting forged documents is to dismiss all claims against all of the defendants, with prejudice.

Plaintiff asserts that Judge Proud was prejudiced against him. A review of the entire transcript and all evidence presented reveals no hint of prejudice. Although Plaintiff did not ask Judge Proud to recuse himself during the hearing, or otherwise raise this allegation of prejudice until after the Report and Recommendation was issued, the Court will address the allegation as a way of ensuring the integrity of the judicial system and the decision in this case.

Judge Proud commenced the hearing with an open mind– observing, "There may be

14

an innocent explanation, I don't know." (Doc. 240, p. 5). Judge Proud did caution Plaintiff that there is a severe penalty– a criminal penalty– for perjury, and he advised Plaintiff of his constitutional rights. (Doc. 240, p. 5). Although Plaintiff perceives prejudice, Judge Proud was legally obligated to warn Plaintiff, who was proceeding *pro se*, of what was at stake. (*See* Doc. 240, pp. 6 and 30). As discussed above, Judge Proud's ruling throughout the hearing were legally sound and evenhanded. Bias cannot be inferred merely from adverse rulings, nor can litigants complain of bias resulting from knowledge gained by a judge in the course of a judicial proceeding. *McLaughlin v. Union Oil Co. of California,* 869 F.2d 1039, 1047 (7th Cir.1989); *United States v. Grinnell Corp.,* 384 U.S. 563, 583 (1966).

### IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS in its entirety** Magistrate Judge Proud's Report and Recommendation (Doc. 241);

- **STRIKES** : (1) the grievance dated April 27, 2008, bearing two "Received and Reviewed" date stamps (May 7, 2008, and September 14, 2009) filed by Plaintiff at Doc. 199-1, pp. 12-13 (Plaintiff's Ex. C), and Doc. 200, pp. 17-18 (Plaintiff's Ex. A-1); and (2) A homemade receipt of sorts, bearing the signature "Toma" and the date 5/5/8, filed by Plaintiff at Doc. 199-1, p. 15 (Plaintiff's Ex. D), and at Doc. 200, p. 20 (Plaintiff's Ex. B);

- **GRANTS** Defendants' motions for summary judgment (Docs. 136 and 138) on grounds of failure to exhaust administrative remedies;

- **GRANTS** Defendants' motion for sanctions (Doc. 214), in accordance with Federal Rules of Civil Procedure 11(b) and (d);
- **DISMISSES with prejudice** *all* remaining claims against *all* defendants; and

- **VACATES** the entries of default in the record against Defendants Geneva E. Bonefield and Samantha Branche (Doc. 237)

The Clerk of Court shall enter judgment in favor of *all* named defendants and

against Plaintiff Donnie D. White.

All pending motions, including Plaintiff White's motions for default judgment as to Defendants Geneva E. Bonefield and Samantha Branche (Docs. 224, 236 and 245), and the defendants' motion for a costs bond (Doc. 226), are **DENIED AS MOOT**. This case is closed.

**IT IS SO ORDERED.**

**DATED: February 18, 2011**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**